## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENNY MONROE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-5384** |
| | : | |
| **ETHICON, INC.,** *et al.* | : | |
| | | |
| **SYDNEY ROGERS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-5461** |
| | : | |
| **ETHICON, INC.,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                    **December 23, 2019**

A judge's order dismissing a defendant with prejudice precludes suing the same defendant in the same case based on the same facts and theory unless the order is changed by the judge or vacated by an appellate court or a plaintiff can adduce new facts or theories warranting another look at the dismissed defendant's liability. Absent these later developments, a plaintiff cannot bring back the same dismissed defendant in the same case.

Applying these bedrock principles in the national mass tort pelvic mesh litigation is often complicated by filings in several states and in federal courts. We may coordinate the federal filings in a multi-district litigation protocol. State courts may similarly marshal and coordinate the similar claims under a mass tort program in each state. Absent a controlling holding, a claimant may seek a different view knowing another judge can simply see the case differently notwithstanding the earlier ruling by another trial judge in another case.

But today's case is different. We study two plaintiffs who sued two Pennsylvania companies in 2019 in a case in Philadelphia state court's mass tort program where the same state

court in the same case dismissed these two companies with prejudice in 2014 as immune under federal law. No party appealed or challenged this finding in five years. No plaintiff sued these Pennsylvania companies in the same Philadelphia mass tort program for five years. But now a law firm with several claimants sued the dismissed Pennsylvania companies back before the same state court judge in the same case under the same complaint. The thoughtful state court judge already dismissed these claims in this case. The plaintiffs admit no new evidence or theory. They incorporate *verbatim* the same long form complaint reviewed by the state court judge in 2014. They seek the same recovery. They just want a different result. It does not work this way. Having chosen to bring claims of a New York citizen and Mississippi citizen against New Jersey companies in the same Philadelphia mass tort case but now attempting to also sue the Bucks County companies dismissed five years ago with prejudice, the creative lawyers for these two citizens may not ignore or overturn the 2014 dismissals with prejudice. They must provide a basis to sue the Pennsylvania companies already dismissed with prejudice.

The New Jersey co-defendant companies removed the Philadelphia cases here arguing these two non-Pennsylvania plaintiffs improperly joined the Bucks County companies solely to avoid their ability to remove a case with a local defendant. We often remand these removed cases if the plaintiffs show a colorable basis to sue the home state defendants. A relatively low bar. But after analyzing these two lawsuits filed in the same case where the state court judge dismissed the home state defendants with prejudice, we cannot come close to finding these plaintiffs have a colorable basis to sue the home state defendants in the same case. Lacking a colorable basis, we deny the New York and Mississippi citizens' motion to remand their case against the remaining New Jersey company defendants to the Philadelphia mass tort program. We instead retain subject matter jurisdiction but transfer venue to districts with some arguable nexus to the claims.

2

## I. Background

According to at least one study, one out of four women twenty years or older suffer from pelvic floor disorders, a medical condition of weakened pelvic muscles or tears in the connective tissue in the female pelvis.[1] Pelvic organ prolapse and stress urinary incontinence are types of pelvic floor disorders resulting, generally, from labor, childbirth, age, obesity, and other factors.[2] In the 1990s, surgically implanted transvaginal, or pelvic, mesh devices began to be commonly used to treat pelvic floor disorders.[3] "When used in urogynecologic procedures, the surgical mesh is permanently implanted in the body. The function of the product is to reinforce the weakened vaginal wall to repair pelvic organ prolapse or to treat urinary incontinence by supporting the urethra."[4] The surgical mesh is a medical device made from synthetic materials or animal tissue. Synthetic material is knitted mesh or non-knitted sheet forms either absorbable, non-absorbable, or a combination of absorbable and non-absorbable material which remain in the body indefinitely and is considered a permanent implant.[5]

On October 20, 2008, the Food and Drug Administration issued a Public Health Notification *Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence*.[6] According to the warning, the FDA received over 1,000 reports from nine surgical mesh manufacturers of complaints associated with surgical mesh devices used to repair pelvic floor disorders.[7] The most frequent complications included mesh erosion, infection, pain, bleeding, organ perforation, neuro-muscular problems, scarring, urinary problems and recurrence of prolapse and/or incontinence.[8] The FDA continued to examine the safety of pelvic mesh and ordered post-market surveillance studies and reclassified surgical mesh to require pre-market approval applications, the agency's most stringent device review pathway. As a result of the FDA's action, all manufacturers ceased marketing

3

surgical mesh intended for repair of posterior compartment prolapse in 2016 and by 2019, the FDA ordered the two manufacturers of the three mesh surgical products on the market for repair of anterior prolapse to immediately stop selling and distributing their products.[9]

### *The national treatment of pelvic mesh federal litigation through a multi-district litigation.*

Thousands of lawsuits in federal and state courts sought recovery for implant patients. Nearly ten years ago, in 2010, the Judicial Panel on Multidistrict Litigation (the "Panel") transferred thirty-six individual pelvic mesh federal cases against C.R. Bard, Inc., a seller and manufacturer of a line of pelvic organ prolapse repair devices into a multi-district litigation ("MDL"). The Panel assigned the MDL to the Honorable Joseph R. Goodwin, of the United States District Court for the Southern District of West Virginia.[10] After new pelvic mesh cases began to be filed against different pelvic mesh manufacturers in federal courts around the country, the Panel created three additional MDLs in 2012, including one against Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon"), and assigned all pelvic mesh MDLs to Judge Goodwin.[11] We are concerned today with the Ethicon MDL.

In July 2013, three plaintiffs[12] filed claims against Ethicon and other defendants including Secant Medical, Inc. and Secant Medical, LLC (collectively "Secant"), Pennsylvania citizens with offices in Bucks County, in the Philadelphia County Court of Common Pleas. Ethicon removed all three actions to the United States District Court for the Eastern District of Pennsylvania and plaintiffs moved to remand.[13] Secant moved to dismiss arguing it is a biomaterials supplier under the Biomaterials Accessibility Assurance Act (the "Act"), a federal statute protecting such suppliers from liability in claims alleging harm from a medical implant device.[14] Before the district court ruled on the motions pending before it, the Panel transferred the cases to the Ethicon MDL.

4

### *Judge Goodwin's December 19, 2013 decision remanding cases from the MDL to the Philadelphia County Court of Common Pleas.*

In support of remand, plaintiffs argued Ethicon's removal of the Philadelphia state court cases is prohibited under the "forum defendant rule" providing an action otherwise removable on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[15] In response, Ethicon argued plaintiffs fraudulently joined Secant because it is immune under the Act and, as immune, Secant's Pennsylvania citizenship does not defeat diversity jurisdiction.

On December 19, 2013, Judge Goodwin granted plaintiffs' motion to remand.[16] Judge Goodwin concluded while the Act *may* bar plaintiffs' claims against Secant, plaintiffs presented evidence the Act *may not* apply to Secant, and he found the "dearth of case law interpreting the Act make it difficult to determine whether the Act is applicable to Secant."[17] Judge Goodwin held plaintiffs did not fraudulently join Secant and remanded their actions to the Philadelphia County Court of Common Pleas.[18] At the time of Judge Goodwin's December 19, 2013 decision on remand, no mass tort program for pelvic mesh existed in the Philadelphia Court of Common Pleas.

### *Philadelphia Court of Common Pleas creates a Pelvic Mesh Mass Tort Program in February 2014.*

Plaintiffs also sued in state courts around the country, including hundreds in Philadelphia. The Philadelphia County Court of Common Pleas Trial Division – Civil is designed to address these mass tort cases. The Court of Common Pleas Trial Division is divided into different programs including the Mass Tort Program in the Complex Litigation Center. The Honorable Arnold L. New is the Supervising Judge and Team Leader of all mass tort programs. The Complex Litigation Center exclusively addresses complex, multi-filed mass tort cases. Under the Complex Litigation Center Practice and Procedures "[i]n every mass tort category of cases, there are regular

5

monthly meetings of counsel, the judicial team leader for the mass tort program, and the director. These meetings are mandatory and are designed to encourage participation by the bar in creating standardized case management procedures tailored to each mass tort category of cases. Liaison counsel for each mass tort program are proposed by the bar and must be approved by the court. Meeting agendas must be supplied to the judicial team leader for the mass tort program and director no later than 48 hours prior to any scheduled meeting date."[19]

Requests to create a mass tort program begin with a motion and, once granted, an individual mass tort action is commenced in the same manner as other civil actions.[20] A master docket is established for each mass tort program where all filings, including standardized pleadings, global motions, case management orders, and other global orders, are filed on the master docket.[21]

Case management orders are entered in every mass tort program and "are created cooperatively by the judicial team leader for the mass tort program and counsel. Case management orders establish how matters in a particular program shall proceed, establish motion and discovery deadlines and procedures, identify liaison counsel, and set forth trial schedules."[22]

Standard pleadings are created for all mass tort programs: "[s]ingle long-form complaints are filed, detailing general allegations common to each program. Averments in master long-form complaints are deemed denied. New matter, cross-claims, and affirmative defenses are deemed filed.[23] "Short-form complaints are filed in individual actions giving case-specific information."[24] Standardized discovery are developed for each mass tort program, "tailored to the specific needs of that program."[25] Depositions common to a specific mass tort are conducted simultaneously and documents common to the mass tort program are produced once through standardized requests for production.[26] Each mass tort program establishes discovery deadlines and the court may appoint

a program discovery master.[27] All mass tort motions are assigned to Judge New for disposition and are submitted under the Revised Mass Tort Motion Procedures.[28]

On February 11, 2014, Supervising Judge New ordered "all currently filed pelvic mesh matters shall be transferred to the Complex Litigation Center Pelvic Mesh Mass Tort Program and coordinated under" the caption *In re: Pelvic Mesh Litigation*, February Term 2014, No. 829. Supervising Judge New ordered counsel to "immediately confer and agree on the content of Case Management Order #1 ...."

On March 31, 2014, Supervising Judge New issued a Case Management Order "dividing the *Pelvic Mesh Litigation* matter into proceedings on a Master Docket and proceedings on each plaintiff's Individual Docket. On the Master Docket, all pelvic mesh plaintiffs collectively were to file a 'long form' complaint alleging facts and causes of action that applied globally to all pelvic mesh cases, and each defendant was to file (1) preliminary objections that raised global objections to all pelvic mesh cases or (2) an answer to the long form complaint."[29]

Within twenty-five days of an Answer to the long form complaint, "each plaintiff was to file a 'short form' complaint on her Individual Docket identifying the counts on the long form complaint that she incorporated by reference and asserting any new facts or causes of action not in the long form complaint. Each defendant could then file preliminary objections on the Individual Docket raising objections that applied specifically to the short form complaint. If the defendant did not file preliminary objections, an entry of appearance by counsel for the defendant would constitute a denial of allegations in the short form complaint and an assertion of all applicable new matter and defenses."[30]

7

### *Long form complaint filed on the Master Docket.*

On May 14, 2014, several individuals filed a long form complaint on the Master Docket against Ethicon and other defendants including Secant under Supervising Judge New's March 31, 2014 Case Management Order No. 1.[31] These individuals alleged Secant, located in Perkasie, Bucks County, Pennsylvania, manufactured and sold surgical mesh and sued it, *inter alia*, in strict liability for design defect, manufacturing defect, and failure to warn.

### *Judge New dismisses Secant in August 2014 under the Act with prejudice.*

Consistent with Judge New's Case Management Order No. 1, Secant filed preliminary objections to the long form complaint. Secant argued it is immune from liability under Act.[32]

Congress intended the Act to protect suppliers of "raw materials and component parts [used for medical devices] [who] do not design, produce or test a final medical device" from "actions alleging inadequate – (A) design and testing of medical devices manufactured with materials or parts supplied by the suppliers; or (B) warnings related to the use of such medical devices[.]"[33] A "biomaterials supplier" is defined as "an entity that directly or indirectly supplies a component part or raw material for use in the manufacture of an implant."[34]

On August 22, 2014, after considering the parties' briefing, extensive record evidence, and oral argument, Supervising Judge New entered an order finding Secant is a "biomaterials supplier" as defined by the Act; is not a "manufacturer of the implant" under the § 1604(b) of the Act; is not a "seller of the implant" under § 1604(c); did not provide "component parts for the implant that failed to meet applicable contractual requirements" under § 1604(d); and is "not related to the manufacturers of the implant, Defendants Johnson & Johnson, Ethicon, Inc., and/or Boston Scientific Corporation, by common ownership or control and that Johnson & Johnson, Ethicon, Inc., and/or Boston Scientific Corporation has sufficient financial resources to satisfy any

8

judgment."[35] Based on his specific findings, Supervising Judge New dismissed Secant from the *In re: Pelvic Mesh Litigation* with prejudice.[36]

After Supervising Judge New's August 22, 2014 Order, Liaison Counsel for plaintiffs, Liaison Counsel for defendants, and Secant, entered into a Stipulation agreeing: (1) Judge New's August 22, 2014 Order "is global in nature and binding on all Pelvic Mesh cases then pending or thereafter filed in the Philadelphia County Court of Common Pleas" ...; (2) "Plaintiffs agree not to name the Secant Defendant as a defendant in any Pelvic Mesh matter initiated in the [Philadelphia County Court of Common Pleas] after the date of this stipulation, whether by Complaint, Short Form Complaint, or Writ of Summons"; (3) "[t]his Stipulation has no impact on any appeal rights Plaintiffs may have regarding the August 22 Order"; and (4) if Plaintiffs appeal the August 22, 2014 Order, and if it is reversed on appeal, Secant agreed not to assert a statute of limitations defense to any pelvic mesh related claim a plaintiff "thereafter asserts or seeks to assert" against it provided the plaintiff timely asserted pelvic mesh claims against other defendants in the Philadelphia County Court of Common Pleas ("the Stipulation").[37]

On January 7, 2015, Supervising Judge New clarified his August 22, 2014 Order: the Secant Defendants "were dismissed from the *Pelvic Mesh Litigation* pending in the Philadelphia County Court of Common Pleas on August 22, 2014, when this Court issued its global Order granting Secant's Motion to Dismiss pursuant to the Biomaterial Access Assurance Act. Any claim filed against Secant in this *Pelvic Mesh Litigation* between August 22, 2014 and the date of this Order was dismissed by the August 22, 2014 Order for the reasons set forth in that Order. This Order is intended solely to clarify the August 22, 2014 Order."[38]

The pelvic mesh litigation continued in both federal and state courts. The parties concede no individual bringing a claim in the Philadelphia *Pelvic Mesh Litigation* Mass Tort Program

9

named Secant as a defendant since Judge New's August 22, 2014 Order. The filings following the discovery of injury began to recede in the federal courts leading Judge Goodwin to suspend the filing of all potential tag-along actions under Panel Rule 7.1(a) in June 2018.[39]

## *New Plaintiffs represented by one firm begin suing Secant in Philadelphia County in 2019.*

In 2019, the law firm Motley Rice, LLC, began filing cases in the Philadelphia Mass Tort *Pelvic Mesh Litigation* naming Secant as a defendant. Motley Rice filed short form complaints consistent with Judge New's Orders. It did not allege new facts or theories. The firm chose the Philadelphia forum even though Secant is in Bucks County and the law firm could have chosen several federal districts to sue. It chose to sue in the same case in Philadelphia County managed by Supervising Judge New. Motley Rice thought it could now sue Secant in Supervising Judge New's case despite his Order dismissing Secant with prejudice from the litigation. In response, Ethicon moved on the Master Docket *Pelvic Mesh Litigation* to enforce Supervising Judge New's August 22, 2014 and January 7, 2015 Orders dismissing Secant under the Act. On July 24, 2019, after considering briefing and the Stipulation, Supervising Judge New dismissed Ethicon's motion but clarified "[n]othing in this Order shall prevent [Secant] from filing Motions to Dismiss pursuant to the [Act]."[40]

### *Ms. Monroe's and Ms. Rogers's claims.*

On September 5, 2019, Penny Monroe, a citizen of New York, and Sydney Rogers, a citizen of Mississippi, sued Ethicon, Inc., Johnson & Johnson, Secant Medical, Inc., and Secant Medical, LLC before Judge New in the Philadelphia County Court of Common Pleas Mass Tort Program *In re Pelvic Mesh Litigation.* With no new facts or legal theories, Ms. Monroe and Ms. Rodgers claim Ethicon and Secant manufactured and sold surgical pelvic mesh products for treatment of

10

medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence, causing them injury.

Ms. Rogers and Ms. Monroe each filed Short Form Complaints incorporating by reference "Plaintiffs' *Master Long Form Complaint* filed in *Pelvic Mesh Litigation* in Philadelphia County Court of Common Pleas, filed as of May 14, 2014 under Master Docket Number February Term 2014, No. 829." Each references Judge New's Case Management Order No. 1. Each seek the same remedy sought under the Judge New orders governing this case: "relief as set for [sic] in the Plaintiffs' *Master Long Form Complaint in Pelvic Mesh Litigation* in Philadelphia County Court of Common Pleas."[41] Ms. Rogers and Ms. Monroe, by incorporating the Long Form Complaint, seek compensatory damages for pain and suffering for severe and permanent personal injuries, medical costs, restitution and disgorgement of profits, economic damages, punitive damages, survival and wrongful damages where applicable, and attorney's fees and costs.

Nothing in Ms. Rogers's or Ms. Monroe's Short Form Complaints added a new legal claim or theory against Secant or alleged new facts regarding Secant. They simply file before Judge New including Secant and refer to the Master Long Form Complaint which Judge New already considered when dismissing Secant five years ago.

On August 22, 2019, Secant moved to dismiss both Ms. Rogers's and Ms. Monroe's complaints under the Act. Secant supported its motions with the affidavit of Karen West, submitted in support of its motion to dismiss in 2014 and relied on by Judge New in his August 2014 Order dismissing Secant, and Secant incorporated its briefing and oral argument made in 2014.

Ms. Rogers and Ms. Monroe responded to Secant's motions to dismiss their complaint making the same arguments already rejected by Judge New: Secant is not a "biomaterials supplier"

11

covered by the Act and it failed to meet the contractual requirements or specifications precluding it from the Act. Ms. Rogers and Ms. Monroe, without any new facts, new legal arguments or evidence, or affidavits, argued to Judge New he should not apply his August 22, 2014 Order because it did not bar later-filed claims.

Supervising Judge New granted Secant's motions, dismissed it with prejudice under the Act, and ordered Ms. Rogers and Ms. Monroe file an Amended Short Form Complaint not naming Secant as a defendant.[42] Ms. Rogers and Ms. Monroe filed Amended Short Form Complaints on November 11, 2019 without naming Secant.[43] The Amended Short Form Complaints are different only in that they do not check off Secant as a defendant; both incorporate the Master Long Form Complaint and seek the relief demanded in the Master Long Form Complaint.

### *Ethicon removes Ms. Rogers's and Ms. Monroe's Amended Short Form Complaints to this Court.*

Ethicon removed Ms. Rogers's and Ms. Monroe's Amended Short Form Complaints not including Secant. We count fourteen similar removals by Ethicon of cases filed by the Motley Rice firm pending before twelve of our colleagues.[44] Ethicon additionally moved to dismiss the actions for lack of personal jurisdiction.[45] Assessing venue at the time of Ethicon's removal involving Ms. Rogers, a Mississippi citizen, and Ms. Monroe, a New York citizen, we directed the parties to show cause why we should not transfer the actions under 28 U.S.C. § 1404.[46]

Ethicon contends its removals are proper because the forum defendant rule does not apply, arguing Ms. Rogers and Ms. Monroe improperly joined Secant. Ms. Rogers and Ms. Monroe respond our subject matter jurisdiction is measured at the time they filed their original actions, and, at that time, they named Pennsylvanian Secant as a defendant. They also argue Judge New's dismissal of Secant is not a "voluntary" action on their part and thus the "voluntary-involuntary rule" for assessing post-filing changes related to jurisdiction does not apply here.

12

In response to our show cause orders on venue, Ethicon argued we should transfer Ms. Rogers's action to the Eastern District of Virginia, site of the pelvic mesh implantation and we should transfer Ms. Monroe's action to the Northern District of New York where she is a citizen and the site of her pelvic mesh implantation. Ms. Rogers and Ms. Monroe argue we should not rule on a transfer of venue while their motions for remand are pending and, even if we assessed whether to transfer venue under 28 U.S.C. § 1404, the *Jumara* factors weigh against transfer.[47]

We held extensive oral argument. We previewed our concerns in our December 9, 2019 Order asking the parties in both cases to address (1) how Plaintiffs' counsel's filing of their 2019 cases naming Secant and incorporating the Long Form Complaint in a case which already precluded filings against Secant is not a fraudulent joinder; and (2) how do we address the decisions of our colleagues Judges Quiñones[48] and Beetlestone[49] remanding similar cases under the forum defendant rule in light of Judge New's August 22, 2014 Order.

The day before our oral argument, Judge Quiñones dismissed with prejudice Secant from two other cases where the plaintiffs did not move to remand.[50] In both cases, the Motley Rice firm represented Ms. Cavanaugh and Ms. Wilson; originally filed their actions in the Philadelphia Mass Tort *Pelvic Mesh Litigation*; Ethicon removed; and Secant filed motions to dismiss under the immunity provisions of the Act. Unlike Ms. Rogers and Ms. Monroe, Ms. Cavanaugh and Ms. Wilson did *not* move to remand. In both cases, Judge Quiñones granted Secant's motions and dismissed it with prejudice as immune under the Act, just as Judge New did in his August 22, 2014 Order. The plaintiffs before her, also represented by Motley Rice, offered no new evidence or theories. They relied entirely upon the record before Judge New. Judge Quiñones studied the arguments on the merits. The Judge found just like Judge New. She found Secant is not a manufacturer and cannot be sued under the Act. Judge Quiñones dismissed Secant with prejudice.

## II.    Analysis

Our first issue today is whether we should grant Ms. Rogers's and Ms. Monroe's motions to remand finding no diversity of citizenship since they sued Secant in September 2019 in Philadelphia County and a defendant cannot remove when the plaintiff sues a local defendant. We deny the motions to remand. Lacking any connection to this District, we transfer venue to the Districts where the causes of action arose.

### A.    Ethicon properly removed these actions.

Ethicon removed the *Rogers* and *Monroe* actions from the Philadelphia County Court of Common Pleas based on diversity jurisdiction: New York and Mississippi citizens suing New Jersey companies (setting aside the Pennsylvanian Secant). Under 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive on interest and costs, and is between — (1) citizens of different States." Ethicon, Inc. and Johnson & Johnson are citizens of New Jersey. Ms. Rogers is a citizen of Mississippi. Ms. Monroe is a citizen of New York. Secant Medical, Inc. and Secant Medical, LLC are Pennsylvania citizens.

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... to the district court of the United States for the district and division embracing the place where such action is pending." [51] Section 1441(b)(2) provides an exception to removal based on diversity of citizenship known as the "forum defendant rule": "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." [52] Our Court of Appeals recently held the "language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning

precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."[53]

On November 20 and 21, 2019, Ms. Monroe and Ms. Rogers moved to remand, arguing their actions are not removable under the forum defendant rule, 28 U.S.C. § 1441(b)(2); they did not voluntarily dismiss their claims against Secant; and, they did not improperly join Secant.[54]

Ethicon contends Ms. Rogers and Ms. Monroe seek to deprive it of access to federal court by naming Secant, a party against whom they have no possibility of recovery in the Philadelphia Mass Tort Program. Ethicon argues Judge New's August 22, 2014 Order dismissing Secant under the Act does not allow these women to have a "colorable" claim they could sue Secant in their original Short Form Complaints before Judge New. Judge New already dismissed Secant in the same case with prejudice.

**B.    Plaintiffs improperly joined Secant in this case.**

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity."[55] Under the doctrine, an action may still be removed if the forum-state or non-diverse defendant is "'fraudulently' named or joined solely to defeat diversity jurisdiction."[56] A joinder is "fraudulent" if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."[57] If we determine joinder is "fraudulent," we may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."[58] If we determine the joinder is not fraudulent, we must remand to state court.[59]

15

Removal statutes are strictly construed against removal.[60] "The question is not whether the claims against the [forum defendant] lack merit, but rather whether those claims are 'wholly insubstantial and frivolous,' such that 'they should have never been brought at the outset.'"[61] The removing party carries a heavy burden of persuasion in making a showing of improper joinder.[62]

Ms. Rogers and Ms. Monroe argue they did not improperly join Secant. They argue their claims against Secant are colorable, pointing to Judge Goodwin's 2013 decision in the MDL; judges in this District adopted Judge Goodwin's 2013 decision; and Judge New's August 22, 2014 order dismissing Secant under the Act does not apply to them because they were not a party to the action at the time of his order and there is no controlling appellate authority applying the Act.

We disagree with Plaintiffs. Ms. Rogers and Ms. Monroe do not have a colorable claim against Secant in the *Pelvic Mesh Litigation*. They chose to sue in the one case and one forum where there is a definitive ruling precluding Secant from being a party. We cannot find Motley Rice's curious filing of actions including Secant in the same case before the same judge has a colorable basis. How would an Order dismissing a party with prejudice have any effect if a party could simply ignore both the Order and appellate rights and sue the same dismissed party in the same case with no new facts or theories?

Judge New precluded this tactic. No plaintiff appealed or challenged his rulings over five years ago although nothing precludes them from doing so. The plaintiffs in hundreds of other cases followed Judge New's Order; they did not sue Secant in Philadelphia. In his August 22, 2014 and January 7, 2015 Orders, Judge New found Secant is a biomaterials supplier as defined by the Act and immune from liability under the Act. Judge Quiñones agrees. After Judge New's rulings, no plaintiffs in the Philadelphia Mass Tort *Pelvic Mesh Litigation* named Secant as a defendant until Motley Rice began doing so in 2019. Plaintiffs fail to provide new facts, evidence

16

or affidavits regarding Secant; they simply make the same arguments Judge New already considered and ruled upon. They are doing the same thing in case after case. Judge Quiñones just confirmed the futility of this tactic in dismissing Secant with prejudice in two cases last week. Plaintiffs have every right to disagree and appeal. Judge New (and now Judge Quiñones) could err. But a party cannot return to the same case and sue a party dismissed with prejudice with no new facts or theories.

At oral argument, Plaintiffs' counsel argued Judge New's Orders do not bind them as "law of the case" because no appellate court ever ruled on the merits of his Orders and Plaintiffs have the right to raise and preserve for appellate review Judge New's Orders. They already preserved these issues under Judge New's protocol.[63] Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[64] Plaintiffs argue "law of the case in a trial court must be subject to appellate review,"[65] citing our Court of Appeals in *Bridges v. Commissioner of Social Security*.[66]

*Bridges* is distinguishable. There, the district court dismissed a count in Bridges' amended complaint even though the count survived the defendants' original motion to dismiss. Bridges argued the trial court did not comply with the law of the case doctrine. Our Court of Appeals rejected this argument, explaining "application of the [law of the case] rule is a discretionary, not absolute, process and *if*, as happened here, *a party advances a basis for a court to reach a different result than it did previously the court will not be bound by its earlier decision*."[67] The defendants made a new argument to the trial court in support of dismissal of a claim and, based on the new argument, the trial court dismissed the claim. In concluding the trial court did not violate the law of the case doctrine, our Court of Appeals noted "[i]n any event, the law of the case principle does not bind an appellate court from rejecting a result reached in a trial court" because a party could

17

never "take a meaningful appeal to an appellate court form an order or judgment of an inferior court."[68] Plaintiffs' reliance on this portion of *Bridges* is inapposite. They almost proudly concede no new argument or theory before us. We do not agree with Plaintiffs' argument Ethicon seeks to do the same thing here "to impermissibly accord [Judge New's August 22, 2014 ] ruling dismissing Secant binding and preclusive effect when it has not been subject to appellate review and could not be if Plaintiff[s] and other later-filing parties were barred from even raising the issue of Secant's potential liability."[69]

Unlike the plaintiff in *Bridges*, Plaintiffs here did not provide Judge New or us with new or additional evidence regarding Secant's status as a biomaterials supplier under the Act. And *Bridges* does not stand for the proposition the law of the case does not apply unless and until a trial court's ruling is subject to appellate review. Our Court of Appeals explained law of the case does not bind it as an appellate court from rejecting the decision or ruling of a trial court; this is a function of appellate review, not law of the case. Neither Ms. Rogers nor Ms. Monroe sought to appeal Judge New's orders dismissing Secant from their actions. They chose not to do so, just like every other plaintiff.

We are also persuaded by Ethicon's argument at oral argument Ms. Rogers and Ms. Monroe could have filed their complaints in the Bucks County Court of Common Pleas, or New Jersey, Mississippi, or New York but chose not to do so. Ethicon's counsel (also once Secant's counsel) readily admitted she could not argue improper joinder based on Judge New's August 22, 2014 Order if Ms. Rogers or Ms. Monroe brought their claims in a venue other than the Philadelphia Mass Tort *Pelvic Mesh Litigation*. But Plaintiffs chose to bring their claims in the Philadelphia Mass Tort Program where Judge New already dismissed Secant with prejudice. We just cannot countenance this flouting of a dismissal order with prejudice in the same case.

We respectfully disagree with our colleagues who recently remanded similar cases brought by the Motley Rice firm to the Philadelphia County Court of Common Pleas.[70] We agree with our colleagues as to the history, the lack of new evidence, and the distinction between a "colorable" claim subject to a "mechanism" of review before dismissal.[71] This mechanism makes eminent sense when reviewing new theories. It also makes sense in a venue other than the same one where the experienced judge most knowledgeable of the facts and liability theories made specific findings of fact and dismissed Secant with prejudice. We agree there has not been much change in the law. But this is the same forum. This is not an attempt to persuade a judge in any other forum. For the past five years, individuals seeking recovery could not sue Secant in the Philadelphia Mass Torts Program. Given the procedures established in the Philadelphia Mass Tort Program's *Pelvic Mesh Litigation*, Judge New's Order dismissing Secant is not a decision by a state court judge in a different matter involving different defendants. Contrary to our colleagues' thoughts, we find this is the exact same case.[72] Ms. Rogers and Ms. Monroe filed Short Form Complaints incorporating the Master Docket Long Form Complaint in the *Pelvic Mesh Litigation*. That litigation is governed by Philadelphia's Mass Tort Program protocol: Judge New entered a case management order establishing motion and discovery deadlines; there is a Master Long Form Complaint; and all motions are assigned to Judge New for disposition under the Mass Tort Motion Procedures. Plaintiffs cannot seek the benefits of the Mass Tort Program under the Master Long Form Complaint and the remedies it seeks while at the same time evade an already decided issue dismissing Secant with prejudice as immune from liability under the Act. There is no need for a mechanism to find a controlling holding in the same case bars the exact same claim filed again.

We are also unpersuaded Judge Goodwin's December 2013 decision in the MDL translates into a finding of ambiguity in this case. Judge Goodwin ruled before the creation of the

19

Philadelphia Mass Tort *Pelvic Mesh Litigation*. Judge New adduced evidence and found Secant is a biomaterials supplier under the Act, a finding Judge Goodwin did not make. Judge Quiñones also confirmed Judge New's findings in her two orders last week granting Secant's motions to dismiss.[73] Both Ms. Cavanaugh and Ms. Wilson argued, in opposition to Secant's motions to dismiss, Judge New's order does not bar them from suing Secant and preserving claims for appellate review. Although she did not address this argument, Judge Quiñones rejected it by dismissing Secant from the cases. The only difference between Ms. Cavanaugh/Ms. Wilson's cases and Ms. Rogers's/Ms. Monroe's cases is the latter two moved to remand: the two groups have the same counsel; the same Short Form Complaint incorporating the Master Long Form Complaint; both groups originally filed their claims in the Philadelphia Mass Tort *Pelvic Mesh Litigation*; but one group remains in federal court here while the others are remanded to the Philadelphia Mass Tort Program.

Considering the procedures of Philadelphia's Mass Tort Program and the effect of Judge New's August 22, 2014 Orders, Ms. Rogers and Ms. Monroe do not have a colorable claim against Secant in the *Pelvic Mesh Litigation* and Secant is improperly joined. Its presence does not create a forum defendant rule problem. We deny Plaintiffs' Motions to remand.

## C. We find no basis for certifying an interlocutory appeal.

Ethicon asks if we find the issue a close call, we should deny the motion to remand and certify the question for interlocutory review to resolve the issue —now pending before twelve of our colleagues—uniformly and fairly. We decline to do so.

Our Court of Appeals has jurisdiction over appeals from final decisions of the district courts.[74] An order denying a motion to remand is not a final order under 28 U.S.C. § 1291.[75]

We may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) if we find: (1) "such order involves a controlling question of law," (2) there is "substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Whether to certify an appeal under section 1292(b) is within our discretion even if the three criteria are met.[76] "The burden is on the party seeking certification to demonstrate that 'exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.'"[77]

The first criteria, a "controlling question of law," is "one in which either: (1) 'if decided erroneously, would lead to reversal on appeal' or (2) is 'serious to the conduct of the litigation either practically or legally.'"[78] "A question that 'appears to be a controlling question of law' but nevertheless presents a question 'about a court's application of the facts of the case to the established legal standards are not controlling questions of law for purposes of section 1292(b).'"[79]

There is a "substantial ground for difference of opinion"—the second criteria— when the matter involves "one or more difficult and pivotal questions of law not settled by controlling authority" and "where there is genuine doubt or conflicting precedent as to the correct legal standard."[80] The third criteria requires a showing an immediate appeal from our decision may materially advance the ultimate termination of this litigation determined by considering "whether an immediate appeal would (1) obviate the need for trial; (2) eliminate complex issues, thereby greatly simplifying the trial; or (3) eliminate issues thus making discovery much easier and less costly."[81]

We decline to certify. There is no practical or legal effect. Ms. Rogers and Ms. Monroe will each continue to sue the same parties they sued in Philadelphia County. We did not affect their remedy. We did not alter their theories. We also do not address a controlling question of

law; we are instead applying long-established undisputed facts. Nothing in an appeal will materially advance the ultimate termination of Ms. Rogers's or Ms. Monroe's claims. An appeal involving a non-party will not simplify the trial between these individuals and Ethicon. It may also be true the individuals may not be prejudiced if they really wish to pursue Secant. If timely, they could sue Secant in Bucks County or in another federal district court with subject matter and personal jurisdiction.

**D.    We transfer venue to the District where the conduct arose.**

In response to our show cause order concerning venue, Ethicon asks us to transfer Ms. Rogers's action to the Eastern District of Virginia where implantation of the pelvic mesh occurred[82] and to transfer Ms. Monroe's action to the Northern District of New York where she is a citizen.[83]  Ms. Rogers and Ms. Monroe oppose transfer.[84]

We may transfer venue under § 1404(a) "[f]or the convenience of parties and witnesses, in the interests of justice" to "any other district or division where it might have been brought ...."[85] As the defendant moving for transfer of venue, Ethicon bears the burden of demonstrating "(1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice."[86]  Once Ethicon establishes the action could have been brought in the proposed district—here, the Eastern District of Virginia and the Northern District of New York—we "must weigh several private and public interest factors to determine whether the balance of convenience tips in favor of transfer."[87]

*Jumara's* private factors include (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the

witnesses – but only to the extent the witnesses may actually be unavailable for trial; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).[88]

*Jumara's* public interest factors include (1) enforceability of the judgment; (2) practical considerations to make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding controversies at home; (5) public policies of the fora; and (6) familiarity of the trial judge with the applicable state law in diversity cases.[89]

The analysis is "flexible and individualized," and we have "broad discretion in deciding a motion to transfer venue."[90] Although we have broad discretion, we must not grant a motion to transfer "without a careful weighing of factors favoring and disfavoring transfer."[91]

### *Ms. Rogers's action could have been brought in the Eastern District of Virginia and Ms. Monroe's action in the Northern District of New York.*

Before analyzing the *Jumara* factors, we must address whether Ms. Rogers's action "might have been brought" in the United States District Court for the Eastern District of Virginia and whether Ms. Monroe's action "might have been brought" in the United States District Court for the Northern District of New York.[92]

Under 28 U.S.C. § 1391(b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;[93] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."[94]

23

Under Section 1391(b)(1), Ethicon and Johnson & Johnson are citizens of New Jersey. The second basis of venue under Section 1391(b)(2) is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Ethicon argues for Ms. Rogers the judicial district in which a substantial part of the events giving rise to the claim occurred in the Eastern District of Virginia, the site of her surgery implanting the pelvic mesh. Ethicon argues for Ms. Monroe the judicial district in which a substantial part of the events giving rise to the claim occurred in the Northern District of New York, the state of her residence and where the site or her implantation surgery.

### *The private factors favor transfer.*

Applying the first factor, both Ms. Rogers and Ms. Monroe chose to file their actions in the Philadelphia County Court of Common Pleas, although neither are Pennsylvania citizens. Ms. Rogers and Ms. Monroe argue their forum preference as plaintiffs strongly weighs in favor of Pennsylvania. But we do not afford Ms. Rogers's and Ms. Monroe's choice of this District paramount deference when they are not citizens here.[95] Neither Ms. Rogers nor Ms. Monroe address their choice of forum is not given deference when they are not citizens of this District.

The second factor considers the defendant's forum preference. Here, Ethicon prefers the Eastern District of Virginia for Ms. Rogers's claims and the Northern District of New York for Ms. Monroe's claims. A defendant's forum choice is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another."[96] But considering the other factors described below, and because neither Ms. Rogers nor Ms. Monroe are citizens of this District, Ethicon's preference weighs in favor of transfer.

The third factor considers whether the claim arose elsewhere. Ms. Rogers and Ms. Monroe argue this factor is neutral because Secant is a "PA manufacture [sic]" and, for Ms. Rogers, Virginia is the site of implant and Mississippi the site of explant, and for Ms. Monroe, "New York injury." Ethicon argues Ms. Rogers's and Ms. Monroe's claims arose where their surgery occurred and, in products liability cases, "the claims typically arise in the plaintiff's home district."[97] We agree and find the third factor weighs in favor of transfer.

The fourth, fifth, and sixth factors consider the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses, but only to the extent the witnesses may be unavailable for trial; and the location of books and records. Ms. Rogers and Ms. Monroe argue these are all neutral factors. Ethicon contends the fourth and fifth factors weigh in favor of transfer, while the sixth factor, location of books and records, is neutral. Ethicon contends its witnesses are located outside Pennsylvania and will be no less inconvenienced by litigation in the Northern District of New York and the Eastern District of Virginia than the Eastern District of Pennsylvania. Ethicon argues Ms. Monroe will not be inconvenienced by litigating in her home state of New York and Ms. Rogers will be no less inconvenienced by litigating in the Eastern District of Virginia than the Eastern District of Pennsylvania. As to the convenience of witnesses, Ethicon argues witnesses in Ms. Rogers's action are most likely in Virginia, site of the implant surgery, and Mississippi, where she resides and site of the explant surgery, beyond the 100-mile radius of our subpoena power for trial. Ethicon makes the same argument for Ms. Monroe's action with witnesses located in upstate New York. These factors weigh in favor of transfer while the sixth factor, location of books and records, is neutral.

On balance, the private factors weigh in favor of transfer to the Eastern District of Virginia and the Northern District of New York.

25

### *The public factors favor transfer.*

Applying the first public factor, the enforceability of a judgment in either United States District Court is a neutral factor. Both Ethicon and the Plaintiffs concede this is a neutral factor.

The second factor is the practical considerations to make the trial easy, expeditious, or inexpensive. Ms. Rogers and Ms. Monroe concede this factor is neutral. Ethicon asserts this factor weighs in favor of transfer because the costs associated with trial in New York and in the Eastern District of Virginia will be less expensive than trial in Philadelphia and the proximity of third-party fact witnesses to the courthouses in the Northern District of New York and Eastern District of Virginia will help expedite progress at trial.

The third factor is the relative administrative difficulty in the two fora resulting from court congestion. Ms. Monroe and Ms. Rogers concede this factor is neutral. Ethicon asserts this factor is "typically given little weight," and we should do so here, and if the factor weighs at all, it is in favor of transfer. In the most recent federal statistics as of June 30, 2019, the median time interval from filing to disposition of civil cases is 5.8 months in the Eastern District of Virginia; 10.1 months in the Northern District of New York; and 5.8 months in the Eastern District of Pennsylvania.[98] This factor weighs in favor of transfer in Ms. Rogers's case, but against transfer in Ms. Monroe's case as disposition in the Northern District of New York is 4.3 months longer.

The fourth factor considers the local interest in decided local controversies at home. Again, Ms. Rogers and Ms. Monroe assert this factor is neutral. Ethicon argues this factor weighs in favor of transfer because the Plaintiffs' claims arose in New York and Virginia, not Pennsylvania and Pennsylvania has no interest in adjudicating claims with no connection to the forum.

The fifth factor considers public policies of the fora. Ethicon argues New York and Virginia have interests in enforcing its product liability laws and weighs in favor of transfer. Ms.

26

Rogers and Ms. Monroe again assert Secant "manufactured" the device at issue in Pennsylvania, but argues this factor is neutral. Pennsylvania has no party in this case. This factor weighs in favor of transfer.

The sixth factor considers the familiarity of the trial judge with the applicable state law in this diversity case. Ms. Rogers and Ms. Monroe argues this factor is neutral. Ethicon argues judges in this district may be less familiar with the "nuances" of Virginia and New York products liability law. Judges in this District are capable of applying Virginia and New York law. This factor is neutral.

Ms. Rogers and Ms. Monroe assert "because the defective product at issue was manufactured in Pennsylvania" and injured them in Virginia and/or Mississippi and New York, the private and public interest factors do not strongly favor either forum. They contend their choice of forum should be given deference. But the "defective product" was not manufactured in Pennsylvania because Secant is not a manufacturer. Judge New already found it is not, a finding neither Ms. Rogers nor Ms. Monroe challenged. And neither Ms. Rogers nor Ms. Monroe are citizens of Pennsylvania and their choice of forum is not given deference for this reason.

Most of the private and public factors weigh in favor of transferring venue to the districts where Ms. Rogers and Ms. Monroe sustained injury. There is no compelling reason to maintain venue in this District simply because non-Pennsylvania Plaintiffs want to proceed here. There are no parties here. We transfer venue to the United States District Court for the Eastern District of Virginia and the Northern District of New York under 28 U.S.C. § 1404.

### III.    Conclusion

The Framers invested substantial time across Independence Mall from our Chambers over 230 years ago to distinguish the jurisdiction of national (federal) courts and state courts. These

27

are core issues of our Article III constitutional obligation. To this day, defendants may not remove a case from state court to federal court asserting the parties are of completely diverse citizenship if one of the defendants is a citizen of the state where the federal court sits. One exception to this bar arises if a person sues a home state defendant in state court with no colorable basis for a claim against this home state defendant. With this unique fact pattern, the remaining defendants barred from removing to federal court may argue the home state defendant is improperly joined to destroy a defendant's right to remove to federal court. Showing this improper joinder is a difficult burden. A defendant often needs to show the plaintiff has no possibility of recovery from the home state defendant. This is not a motion to dismiss standard where we measure whether the plaintiff plead a plausible claim against the home state defendant. This is the mechanism to ensure the case does not proceed and requires motion to dismiss briefing.

But we cannot think of a better example of a plaintiff lacking a colorable claim than when she sues a home state defendant already dismissed in the same case with prejudice with no new facts or legal theories. What possibly could be the basis? The judge in the same case ruled five years ago she could not sue this defendant in this case. She could possibly sue the defendant in another court and her claim there may be colorable, at least until a controlling appellate decision may affect another court's holding. In this example, a judge would review the merits on a motion to dismiss. But she cannot credibly bring a colorable claim against a home state defendant in 2019 in the same case where the same judge dismissed the home state defendant with prejudice several years ago based on a complete record leading to fact findings requiring the judge find the home state defendant cannot be sued in this case and dismissing it with prejudice. Especially when the plaintiff admits no new facts or theories. We retain subject matter jurisdiction as plaintiffs improperly joined Secant.

28

As there is no possible nexus to this District other than Plaintiffs' counsel has a Philadelphia office, we transfer Ms. Rogers's and Ms. Monroe's claims to the venues where their causes of action arose and where those courts would presumably be able to exercise personal jurisdiction. [99]

---

[1] American Urogynecologic Society Information for Patients: Pelvic Floor Disorders, https://www.voicesforpfd.org/about/what-are-pfds/ (last visited Dec. 23, 2019).

[2] https://www.fda.gov/medical-devices/urogynecologic-surgical-mesh-implants/pelvic-organ-prolapse-pop; https://www.fda.gov/medical-devices/urogynecologic-surgical-mesh-implants/stress-urinary-incontinence-sui (last visited Dec. 23, 2019).

[3] Elizabeth O'Connor Tomlinson, CAUSE OF ACTION IN PRODUCTS LIABILITY AGAINST MANUFACTURER OF TRANSVAGINAL MESH DEVICE, 67 Causes of Action 2d 379, § 2 (Nov. 2019).

[4] *Id.* (citing http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/ucm262435.htm).

[5] https://www.fda.gov/medical-devices/implants-and-prosthetics/urogynecologic-surgical-mesh-implants (last visited Dec. 23, 2019).

[6] https://www.fda.gov/medical-devices/urogynecologic-surgical-mesh-implants/fdas-activities-urogynecologic-surgical-mesh (last visited Dec. 23, 2019).

[7] Tomlinson, *supra* note 3.

[8] https://www.fda.gov/medical-devices/urogynecologic-surgical-mesh-implants/considerations-about-surgical-mesh-sui (last visited Dec. 23, 2019).

[9] *Supra* note 6.

[10] *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2327, 2019 WL 385423, at * 2 (S.D.W.Va. Jan. 30, 2019).

[11] *Id.* Ultimately, the Panel assigned seven pelvic mesh MDLs to Judge Goodwin "compris[ing] one of the largest multidistrict litigation proceedings in this country's history" involving over 104,000 individual plaintiffs suing numerous defendant manufacturers of different pelvic mesh products. *Id.* at * 1.

[12] Only one of the three plaintiffs is a Pennsylvania citizen. The other two are citizens of Indiana and Texas.

[13] *Musewicz v. Ethicon, Inc.*, No. 13-4087; *Hammons v. Ethicon, Inc.*, No. 13-4086; *Delacruz v. Ethicon, Inc.*, No. 13-4088.

[14] 21 U.S.C. §§ 1601-06.

[15] 28 U.S.C. § 1441(b)(2).

[16] *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 13-26024, 13-26259, 13-26032, 2013 WL 6710345, at * 1 (S.D. W.Va. Dec. 19, 2013).

[17] *Id.* at * 3.

[18] *Id.*

[19] PBI *Civil Practice and Procedure Manual Section on Complex Litigation*, § 9-3.1 (Oct. 2019).

[20] *Id.* at §9-3.2

[21] *Id.* at § 9-3.12.

[22] *Id.* at § 9-3.3.

[23] *Id.* at § 9-3.4(a).

[24] *Id.* at § 9-3.4(b).

[25] *Id.* at § 9-3.5.

[26] *Id.* at §§ 9-3.6, 9-3.7.

[27] *Id.* at § 9-3.8.

[28] *Id.* at § 9-3.9.

[29] *Hammons v. Ethicon, Inc.*, 190 A.3d 1248, 1256 (Pa. Super. Ct. 2018).

[30] *Id.*

[31] *See Rogers*, No. 19-5461, ECF Doc. No. 1-3 (Long Form Complaint).

[32] Congressional findings on the purpose of the Act is codified at 21 U.S.C. § 1601.

[33] 21 U.S.C. § 1601(7).

[34] *Id.* at § 1602(1)(A).

36 Although Secant styled its objections as "preliminary objections" under the Pennsylvania Rules of Civil Procedure, the Act, a federal statute, provides the procedure for filing a motion to dismiss actions against biomaterials suppliers. *See* 21 U.S.C. § 1605(a). Judge New considered Secant's preliminary objections as a motion to dismiss.

37 *Rogers*, ECF Doc. No. 1-1 at 31 (using the pagination assigned by the CM/ECF docketing system).

38 *Id.* at ECF Doc. No. 16-2 at 2 (using the pagination assigned by the CM/ECF docketing system).

39 Under Rule 7.1(a) "[a]ny party or counsel in actions previously transferred under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which that counsel appears. The Panel has several options: (i) filing a CTO under Rule 7.1, (ii) filing a show cause order under Rule 8.1, or (iii) declining to act (Rule 7.1(b)(i))."

40 *Rogers*, ECF Doc. No. 1-1 at 48 (using the pagination assigned by the CM/ECF docketing system).

41 *Rogers*, ECF Doc. No. 1-1 at 5-12 (using the pagination assigned by the CM/ECF docketing system); *Monroe*, No. 19-5384, ECF Doc. No. 1-1 at 5-12 (using the pagination assigned by the CM/ECF docketing system).

42 *Rogers*, ECF Doc. No. 16-4; *Monroe*, ECF Doc. No. 16-1.

43 *Rogers*, ECF Doc. No. 1-1 at 99-107; *Monroe*, , ECF Doc. No. 1-1 at 114-122.

44 *Patin v. Ethicon, Inc.*, No. 19-1290 and *Kienzle v. Ethicon, Inc.*, No. 19-4499 (Surrick, J.); *Quinn v. Ethicon, Inc.*, No. 19-5462 (DuBois, J.); *Dewitt v. Ethicon, Inc.*, No. 19-5463 (Jones, J.); *Seger v. Ethicon, Inc.*, No. 19-4494 (Savage, J.); *Roth v. Ethicon, Inc.*, No. 19-4497 (Padova, J.); *Crosby v. Ethicon, Inc.*, No. 19-4500 (Slomsky, J.); *Kuminski v. Ethicon, Inc.*, No. 19-4501 (Goldberg, J.); *Morrison v. Ethicon, Inc.*, No. 19-4503 (Diamond, J.); *Stewart v. Ethicon, Inc.*, No. 19-4776 (McHugh, J.); *Sandford v. Ethicon, Inc.*, No. 19-4777 (Sanchez, C.J.); *Davis v. Ethicon, Inc.*, No. 19-4778 and *Burkhart v. Ethicon, Inc.*, No. 19-4502 (Robreno, J.); and *Markham v. Ethicon, Inc.*, No. 19-5464 (Baylson, J.).

45 Since the beginning of the Philadelphia Mass Tort Program, Ethicon argued lack of personal jurisdiction and renewed its motion after the Supreme Court's decision in *Bristol-Myers Squibb v. Superior Court of California, San Francisco Cnty.*, --- U.S. ---, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017). Ethicon litigated this issue in another case arising under the Master Long Form Complaint, and on April 10, 2019, the Pennsylvania Supreme Court granted Ethicon's petition for allowance of appeal only as to one issue: "[w]hether the Due Process Clause of the Fourteen Amendment to the United States Constitution and 42 Pa. Cons. Stat. Ann. § 5322(c) precludes Pennsylvania from asserting personal jurisdiction over two New Jersey companies in a case brought by an Indiana

31

resident asserting claims under the Indiana Product Liability Act." *Hammons v. Ethicon*, 206 A.3d 495 (Pa. 2019).

[46] *Rogers*, ECF Doc. No. 5; *Monroe*, ECF Doc. No. 5.

[47] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).

[48] *Kalberer v. Ethicon, Inc.*, No. 19-2195, ECF Doc. No. 11.

[49] *Newman v. Ethicon, Inc.*, No. 19-4496, 2019 WL 6251194 (E.D. Pa. Nov. 21, 2019).

[50] Neither party addressed these decisions during oral argument. *Cavanaugh v. Ethicon, Inc.*, No. 19-2014, 2019 WL 6883752 (E.D. Pa. Dec. 16, 2019); *Wilson v. Ethicon, Inc.*, No. 19-1905, 2019 WL 6880472 (E.D. Pa. Dec. 16, 2019).

[51] 28 U.S.C. § 1441(a).

[52] *Id.* § 1441(b)(2).

[53] *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).

[54] *Monroe*, Doc. 7-1; *Rogers*, ECF Doc. No. 4-1.

[55] *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006). The use of "fraudulent" to describe the issue is a misnomer. There is no need for fraud. No one claims deceptive conduct. The better description used by several courts is "improper" joinder. *See generally* 16 *Moore's Federal Practice*, § 107.52[4][a] n. 14, 14.1 (collecting cases).

[56] *In re Briscoe*, at 216.

[57] *Id.* (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)).

[58] *Id.* (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

[59] *Id.*

[60] *Id.* at 217 (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851052 (3d Cir. 1992)).

[61] *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 462 (E.D. Pa. 2016) (quoting *In re Briscoe*, 448 F.3d at 218 and *Batoff*, 977 F.2d at 853-54).

[62] *In re Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977 F.2d at 851).

[63] Plaintiffs' counsel conceded they elected not to appeal Secant's dismissal.

[64] *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

[65] *See e.g. Rogers*, ECF Doc. No. 18 at 3.

[66] 672 F. App'x 162 (3d Cir. 2016).

[67] *Id.* at 167 (citing *Africa v. City of Phila. (In re City of Phila. Litig.)*, 158 F.3d 711, 718 (3d Cir. 1998)) (emphasis added).

[68] *Id.*

[69] *See e.g. Rogers*, ECF Doc. No. 18 at 3.

[70] *Kalberer v. Ethicon, Inc.*, No. 19-2195, ECF Doc. No. 11; *Newman v. Ethicon, Inc.*, No. 19-4496, 2019 WL 6251194 (E.D. Pa. Nov. 21, 2019). Judge Quiñones recently remanded two additional cases to the Philadelphia County Court of Common Pleas: *Murphy v. Ethicon, Inc.*, No. 19-4495, ECF Doc. No. 15 and *Pena v. Ethicon, Inc.*, No. 19-4498, ECF Doc. No. 15.

[71] *Kalberer*, ECF Doc. No. 11 at 2-3.

[72] "Under this governing law, the law-of-the-case doctrine has no application *here where the Removing Defendants attempt to rely upon a decision by a state court judge in a different matter involving different plaintiffs*." *Id.* at n. 1 (emphasis added). We find this is the same matter with the same complaint and no new facts or theories adduced by Ms. Rogers or Ms. Monroe.

[73] *Cavanaugh,* 2019 WL 6883752; *Wilson*, 2019 WL 6880472.

[74] 28 U.S.C. § 1291.

[75] *In re Diet Drugs (Phen/Fen) Prods. Liab. Litig.*, 93 F. App'x 345, 347 n.3 (3d Cir. 2004).

[76] *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)).

[77] *L.R. v. Manheim Twp. Sch. Dist.*, 540 F.Supp.2d 603, 608 (E.D. Pa. 2008) (quoting *Douris v. Schweiker*, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002)).

[78] *Kao v. CardConnect Corp.*, No. 16-5707, 2019 WL 2615720, at *4 (E.D. Pa. June 26, 2019) (quoting *Katz*, 496 F.2d at 755).

[79] *Id.* (quoting *Glover v. Udren*, No. 08-990, 2013 WL 3072377, at *2 (W.D. Pa. June 18, 2013)).

[80] *Id.* (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76, n.1 (1st Cir. 1984) and *Bradburn Parent Teacher Store, Inc. v. 3M*, No. 02-7676, 2005 WL 1819969, at * 3 (E.D. Pa. Aug. 2, 2005)).

[81] *Kao*, 2019 WL 2615720, at *5 (quoting *Wheeler v. Beard*, No. 03-4826, 2005 WL 2108702, at *3 (E.D. Pa. Aug. 31, 2005)).

[82] *Rogers*, ECF Doc. No. 13.

[83] *Monroe*, ECF Doc. No. 12.

[84] *Rogers*, ECF Doc. No. 14; *Monroe*, ECF Doc. No. 13.

[85] 28 U.S.C. § 1404(a).

[86] *Weedon v. Godlewski*, No. 13-7461, 2016 WL 538232, at *2 (E.D. Pa. Feb. 11, 2016) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

[87] *Id.* (citing *Jumara*, 55 F.3d at 879-80).

[88] *Jumara,* 55 F.3d at 879 (citations omitted).

[89] *Id.* (citations omitted).

[90] *Weedon*, 2016 WL 538232 at * 2 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

[91] *Id.* (citing *Shutte*, 431 F.2d at 24-25).

[92] 28 U.S.C. § 1404(a).

[93] Under Section 1391(c)(2), residency of a defendant "entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated" is deemed to be "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

[94] 28 U.S.C. § 1391.

[95] *Dandy v. Ethicon, Inc.*, No. 19-2454, 2019 WL 6828613 (E.D. Pa. Dec. 13, 2019); *Kiker v. SmithKline Beecham Corp.*, No. 14-1445, 2014 WL 4948624, at *4 (E.D. Pa. Oct. 1, 2014); *McCraw v. GlaxoSmithKline*, No. 12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014); *Saint-Gobain Calmar, Inc. v. Nat'l Prod. Corp.*, 230 F. Supp. 2d 655, 659 (E.D. Pa. 2002); *Weber v. Basic Comfort, Inc.*, 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001).

[96] *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005).

[97] *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 2160640, at * 4 (E.D. Pa. July 17, 2009).

98 https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/06/30-1 (last visited Dec. 23, 2019).

99 We do not address our personal jurisdiction as transfer of venue is plainly warranted. We deny the Defendants' motion to dismiss based on personal jurisdiction without prejudice.